Council, can you hear? We can see you now. That's much better. You may proceed. Thank you, Your Honors, and may it please the Court, Paul Clark for the Appellant Applainted Alexander Lege. I'd like to reserve three minutes for a vote, if that is possible. Now, I'd like to address two core issues in this case. First issue is the Supreme Court and this Court has repeatedly held that warrantless arrest in the home of a suspect, even if there is probable cause of a crime having been committed, is unconstitutional unless there's an exception to the warrant requirement. So the first question... Stop right there. Why is it unconstitutional if the officers were permitted to be where they were to accomplish the arrest? Well, there's really two answers. One is kind of more formalistic, which is the Supreme Court says so. Where has the Supreme Court said that? In Peyton v. New York, Your Honor, and a long string of cases after that, Minnesota v. Olson, for instance, the Supreme Court said... I've got to tell you, I don't think that's right. I'll just let you know right from the get-go. I don't think anything in the Supreme Court's decision says that an officer with probable cause, who's present lawfully, can't arrest. But you're telling me those cases say that, so I'll look again. I've got to tell you, I don't think that's the case. Okay, well, again, Your Honor, in Minnesota v. Olson, for instance, at 495 U.S., page 95, the Court, following Peyton and citing Peyton, said, quote, So that seems to me to be, again, what the Supreme Court has said repeatedly. And it's certainly also true that the Supreme Court has said the entry into a home to make an arrest is unconstitutional. But, of course, that doesn't negate the fact that even if the police, for some reason, find themselves in a home lawfully... But just let's focus on that, because it seems to me at least Peyton, which I am more familiar with, clearly is talking about a situation where the officers were not entitled to be where they needed to be to accomplish the arrest. But that is the main argument here. Were the officers entitled to be where they were when they accomplished the arrest? Did your client give consent? That's what I think we need to focus on. Well, Your Honor, again, I think there's several different issues. The short answer is no, Mr. Legge did not give consent. And even assuming that he did give consent initially, once police left and came back several minutes, one of them left and came back several minutes later, the police would have had to seek consent again. But again, I'd like... I mean, the guy says, look, I'm even going to leave the door open for you. I'm sorry, he doesn't say that. The officer orders him to leave the door open. No, I watched the video. I heard your client say, leave the door open. That was the officer said, I'll leave it a crack. But it was your client who said, leave the door open. That's what the video showed. All right, Your Honor, I thought that the officer first said to leave the door open before that. But again, I could be mistaken on that. But I think the officer was using a show of authority. And in any event, regardless, when someone leaves, and again, but again, if I could come back, if I could finish making my first point, because I do think, Your Honor, again, to bear with me just a moment. I do think because I didn't finish answering the first question, which is why do they, can they not arrest the person if they happen to be there for some reason? Again, formalistically, that's what the court has said. But also, again, more philosophically. If you're pointing to the cases you cited before, I know that's not what Peyton says. So you can stick to that position, but it's not going to be a winner with regard to Peyton. Well, Your Honor, I'd suggest that Peyton does say that. Peyton talks about they go into the house, usually exigent circumstances or some other exception is unconstitutional. But again, to go back to the fundamental point, the home, you know, has a long tradition. Peyton tells us that the Fourth Amendment prohibits police from making warrantless and non-consensual entry into suspect's home in order to make routine felony arrest. But the argument here is that this entry was consensual. So the focus is on the consent, not on the simple fact of arrest. And we just loop right back to what we were talking about. If your client gave consent, then I don't see how you're arguing based on actual reading of Supreme Court cases that the arrest itself was unlawful if, in fact, the officers had consent to be there. Well, again, Your Honor, the point of the warrant requirement is that people have a right to have, before they are taken into custody in their own homes, to have a neutral and detached magistrate make the determination. That's not what Peyton says. Well, again, Your Honor, I guess... I suggest you arrest Peyton again. Well, thank you, Your Honor. But again, I think Peyton is quite clear. What you quoted is correct. But again, the courts have repeatedly said that a warrantless arrest in a home is unconstitutional. Point me to a single case that a warrantless arrest when the officers had consent to be there is unconstitutional. The cases so far don't seem to say that. So if there's any others, I'll take a look. Otherwise, I think we need to focus on whether there was effective consent. Well, again, Your Honor, I don't think there's a specific case that says that, but there are a number of cases that talk about this. The other case that I would cite, in effect, we didn't cite it in our briefs, but I wanted to mention it because I think actually under Rule 28J, I might need to actually file something in writing. But there's a case from this, Hopkins v. Bonvicino in 2009, again, that makes the same point. And that's a case where the police officers enter a residence under some kind of caretaker exception. And again, this court said that a warrantless arrest, even when there is probable cause, requires exigent circumstances to make the arrest. And again, we think that the importance of a person's home needs to have that additional layer of protection. So it can't be the case that police want to arrest someone, they can come to your door and say, can I come inside? And the police steps through the door and says, you're under arrest. Now, again, it comes to, again, address the question of the consent that Your Honor raises, which was my, again, my second point. So first of all, I don't want to argue a lot about the initial so-called consent. It seems to us that in the totality of circumstances, even the initial when the officer is walking through the door, as he walks through the door, he says, can I come in? I watched that part of the video, too. And I got to say, it didn't really seem like that to me. He doesn't seem to have entered the apartment before he asks and your client gives consent. If that's the case, then I'm not sure what else you have to argue. Is there something else in the video? Well, perhaps, Your Honor, I don't know. But the first point is, of course, the officer is literally in the doorway when he says this. But again, even putting that video was from his perspective, and I could see the doorway and presumably the cameras on his chest someplace. So he couldn't he couldn't have a video showing the doorway if he'd actually entered the apartment. That's not how line of sight works. Well, I guess it would depend upon the angle, Your Honor. But again, even assuming that there was initial consent, the next point is a normal social expectation that we apply in cases like this, when someone leaves an apartment, and they come back several minutes later. And again, this was about three and a half minutes later, it starts at 10 minutes, and then it goes to comes back at 1330. And Officer Osters, they leave and he comes back. And second, of course, that Officer Osters says, Can I come in? And again, this is very clear on the video, I come in. So let me give you an example, Your Honor. I mean, imagine that a young lady comes to your door, says, Sir, can I come in and use your telephone? And you think, well, sure, she just seems pretty harmless. Sure, come on in. And she said, turns out says, Okay, Joe, let's go. We're going in. I think a normal person. Not a great analogy, because the officer has certain authority that extends to others that are with or in the chain of command. Unlike the young woman who says, Come on down, Joe, we'll all go in. So the question to me seems that there's a very short period of time when he leaves, they know, your client knows why he's leaving, they're going to go up and talk to the other people, and comes back with another officer. So you're saying that somehow the chain of consent ended when he left, and they were going to leave the door open a crack? Your Honor, I would say again, the normal social expectation, which is again, what the Supreme Court has said we should apply in these cases, when you leave, when you have a stranger comes to your door and comes in and talks to you for a few minutes. Stranger, this is, let me just step back. Did your client call the police? Yes, Your Honor, he did. So it's not a stranger, it's a police officer who shows up at the request of your client, correct? Well, yes, Your Honor. But again, I would say it's effectively the same as a stranger. This is not a friend of his, this is not a family member, this is someone he doesn't know very well. I think he'd met him before, but this is... You would ascribe zero significance to the fact that your client calls the police department, in effect asking and hoping someone will show up, and then they have this conversation with each other, and you're equating that to as if a stranger had showed up on the front porch? I think that's the that this court should apply, Your Honor. What's your best authority for that, so we can, you know, ground this in some precedent? Well, a number of the cases, such as Georgia versus Randolph, which was when they come to the door and one person says come in, the other person says stay out. Again, the Supreme Court said we apply a normal social expectation, and a stranger wouldn't come to the door, and if one person said come in, one person comes out. The Supreme Court reasoned that in that type of circumstance, you wouldn't come in. So again, that's the type of reasoning one applies here. So, but again, when a person comes to your house and leaves, goes away, goes to another residence, and then comes back later, and not only comes back later, but comes back with someone else, and then they just walk into the apartment. We have argued, and again, I think the normal social expectation in that circumstance would be you have to ask for consent. You have to knock on the door. You would say, hey, I'm back. Can I come in? Didn't happen in this case. They just walk in with not so much as a by your leave, and at that point in time, again, even assuming there was initial consent, the return with multiple officers, and again, the multiple officers changes the whole dynamic. You have two cops now on both sides of him, or you know, now he's outnumbered. There's a very different dynamic from talking to one person as opposed to talking to two people. You might have a good cop, bad cop, but I think there's a very big difference, your honors, bringing a second police officer in, and again, my point is you have to adhere to the scope of the consent. By saying, can I come in, you are not consenting to let a whole bunch of people in, or even a second person. Our cases turn on the, and the Supreme Court's cases turn on the reasonable expectation of privacy, and there are more than a few cases that don't draw a line between one officer and two officer. Do you have any authority that we should look at that suggests there is a difference in the reasonable expectation of privacy when there is a second officer accompanying the first? Well, there's two points, your honor. So first is we're talking about a seizure of the person. Do you have any authority that supports the proposition you're offering up? I think, yes, being looked at by two people is very different being looked at by one person. How is that authority? How is that precedent? Do you have any precedent to cite to us that draws the line where you're advocating? Now, the answer can be no, and you can still argue for it, but my question is, is there any authority to support this proposition? I don't know of any authority directly on point, but again, the authorities say you apply the normal social expectation. No, they don't. They say reasonable expectation of privacy. But again, your honor, the other point is that we're now, we're talking about a seizure of the person, not a search. So I think the cases that talk about the reasonable expectation of privacy is when you're searching someone. We're not talking about a search. We're talking about a seizure of the person. And so I don't think the cases that talk about reasonable expectation of privacy for a search are necessarily relevant to the seizure of the person. I know I'm almost out of time. The other thing, your honor, if I, maybe I can get to this on rebuttal. The city did argue briefly that somehow we had waived the issue of the warrantless arrest. I would note that this was brought up over and over again, even in the complaint, paragraph 77, 76, 78, 87, 88, all repeatedly refer to a warrantless arrest being unconstitutional without exigent circumstances. In any case, I see I'm out of time. So I appreciate if the court does give me any time for rebuttal. You're good. You may proceed. Thank you, your honor. This is Greg Henrickson. I'm here for the city of Ketchikan and Oster and Cheatham, Justin Oster and Robert Cheatham. May it please the court. From the city's point of view, this is a straightforward case. The officers responded to an address they were familiar with and parties they were familiar with from earlier interactions. Both the upstairs neighbor and Mr. Leger called the police. They had stories that didn't line up with each other. Each had their own position on what had occurred. Officer Cheatham went upstairs to speak to Mr. Bonita and his family and people who were in the residence upstairs. And Justin Oster stayed downstairs and talked to Mr. Leger. And thankfully, we have all this on video and audio recordings, which we submitted and offered a transcription as well. The court below heard these and we properly found that consent to enter was given without any threat or any circumstances that would cause us to or cause the courts to question that consent. Mr. Leger knew who was talking to a uniformed officer and said, come on in, and in fact, pointed to the utility knife that he told the 911 operator he had. And none of this came up until long after the fact when this case was filed, where he now claims he didn't actually give a valid consent. But if this isn't a valid consent, sufficient to allow the responding officers to enter the premises, then it's difficult to see what would be valid consent. Let me ask you, you referenced to, in effect, the district court finding, but that doesn't matter here, does it? We're here on summary judgment, which is a de novo review, so we don't have any deference to quote findings of the district court, do we? I believe that's correct, Your Honor. That this is an independent review and that appears the court has reviewed the videotape and the transcripts, and that, I think, speaks for itself. If I had some doubt in my mind because of the sequence of step back and where was the officer at that point, would that raise a factual issue? If it's not 100% straightforward, if you argue? No, because he was in the doorway and very clearly on the videotape, he does not step through until after he's given consent. He doesn't actually enter the premises, and that's very clear from the videotape. Despite Mr. Leger's deposition testimony on that point, and this is where it comes down to what is sufficient to create a genuine issue of material fact on summary judgment, and the city's position is simply naysaying of very obvious evidence is insufficient to create a genuine issue of material fact because no reasonable juror could find that, in fact, as Mr. Leger had earlier claimed that Oster was stepping through as he asked for consent. Video shows that he, in fact, wasn't moving at all, so what we have are just assertions under oath, but they don't raise a genuine issue of material fact. That's our position on this, and the consent was clearly given far from being retracted. Mr. Leger remained friendly and continued to keep an open door for the officers. Obviously, he didn't expect to be arrested, but this is what I think the arguments kind of changed as we moved along in this case, and the most recent reply really focuses in on this issue of can an officer with probable cause, presumably with probable cause, enter an arrest? Well, yes, if there was consent, that doesn't change because the officer now has probable cause, and it's an interesting argument to say, Mr. Clark is raising to say that if the circumstances change during the investigation and the witness suddenly becomes a suspect, there's no case law saying that the officers must now alert that witness to the fact that they may be arrested, and do you still want us in here? That has not been the position of the Supreme Court under Payton or anything else, and I just want to point out the case just cited, I did have a chance to look that up on Westlaw here, the Hopkins v. Vincino, and in that case, they actually broke into the suspect's house because they believed he might be having a diabetic coma, and the court didn't believe that or didn't find that credible, so that's a different circumstance again, but here, I think it can be encapsulated this way, that an officer with probable cause has no greater authority to enter private residence than an officer without probable cause, but the officer has no less authority either, and either way, here there was consent, and it was not retracted or limited, so that when Officer Cheatham came in and arrested Leger, no doubt that did upset him, because one minute he's having a conversation with Officer Oster, and the next Cheatham is there, you're under arrest, no doubt jarring, but he did in fact waive his privacy right, and that's what this is about, yes, there is a very important privacy right for the sanctity of the home or apartment, and that's protected as it should be, but you also have the ability to waive that, and Mr. Leger chose to do so without limitation, he was very welcoming, which in hindsight, maybe you could do something differently, but that's not what he did, and we're working with what he did, and what's on record in the video, so you know, that seems to me, this is as clear a case as you can get, that consent was given, and the officers followed through, as far as probable cause go, we have the earlier argument, which we say was waived on appeal, but assuming that it wasn't, that there wasn't sufficient probable cause, in main part because of the description of the knife, Mr. Bonita had described it as possibly a kitchen knife, based on his earlier interaction with Mr. Leger apparently, but the description wasn't exact, it doesn't have to be exact, the city's position on this is, the description of a witness does not have to precisely identify the weapon, or whether it's a firearm or knife, in order to constitute probable cause, that's the stuff that gets into cross-examination at trial, and was in fact, I believe used here, against the testimony of Mr. Bonita, but it doesn't nullify probable cause, the officers have to make an on-site determination, based on the evidence in front of them, and they did, between Cheatham and Oster, and the 911 calls, there was probable cause here to arrest Mr. Leger, and they did so, but there's no constitutional violations on this record, we believe the court below should be upheld on this point, and in the alternative, the extensive it's reached, we believe that qualified immunity would apply, and of course, the city wouldn't be on that basis, but I don't know if there's any further questions, we're content to rest on the briefing. Very well, we'll hear a rebuttal, we'll give you three minutes. You're muted, counsel. Thank you, your honor, thank you for letting me know. So, again, a couple of the points that I'd like to respond to, there's clearly an entirely new dynamic that comes about when officer Cheatham enters, and they just walk in, again, not so much as a buy-your-leave, Mr. Leger is clearly very nervous at this point, by having the second officer, who's very confrontational. So, again, even if you consented to the initial with one officer, this is a very different circumstance, and as they said in their briefs as well, the consent was never retracted, we've never given an opportunity. You know, if they knocked at the door and said, hey, can we come back in, or can we come in now, and given Mr. Leger an opportunity, he may well have said, no, I don't want you to come in, but he certainly, they just walk in, and they have no opportunity to do that. How do you respond to the Rubio case, which seems to indicate that the consent is, you know, the scope, but not related to the number of officers? Well, Your Honor, we've, and I'm almost out of time, but we think that the Hardeen's case clearly undermines the Rubio case. Indeed, other courts have said that it is undermined, Hardeen being a Supreme Court case, a higher authority, and again, numerous cases say that police have to adhere to the scope of the consent, and this was well beyond scope of the consent. Again, the question was, may I come in, not may we come in, so I do think that Hardeen's, if not outright overrule, certainly calls into question, and again, we have a case even, I think, from Connecticut saying that Rubio is not, is no longer good law, so we don't think this court should follow. The Connecticut case probably doesn't hold a lot of sway here in federal court in the Ninth Circuit in Alaska, does it? Well, no, I understand, but I'm saying that there are federal courts that have acknowledged that Hardeen's appears to have overruled or certainly called into question Rubio, but again, we argued a lot in the lower court about Rubio, but we don't think that Rubio should be followed. It's certainly been undermined, if not outright overruled, and again, the case law now is that the officer must adhere to the scope of the consent, and again, adhere to normal social expectations, which we don't think was true in this case. Finally, very briefly on the qualified immunity, I think we had this in our brief. Qualified immunity, of course, only applies to officers, but in any event, I don't think this court should address it in the first instance. The district court did not address that issue. No, but I mean, given all the nuances of this particular case and the fact that you don't seem to have direct authority online, particularly Supreme Court authority, why wouldn't qualified immunity apply to the officers? Well, because again, Your Honor, we think it's been quite clear, and I see I'm almost out of time. Could I finish answering the question? Yes, thank you. So again, we were talking about the Payton case, and if I can quote that, I'm looking at 588 to 589, where the Payton court says explicitly. Now again, it does talk a lot about the entry, because in that case, there was an entry, but it also doesn't limit it to entry. So again, if I could quote, quote, So again, I would suggest again, Your Honors, that the case law is not limited to entry, and when they say invasion, they're not talking about, as I read it certainly, they're talking about invasion of the sanctity and invasion of personal, if you want to call it autonomy, personal integrity. It's not necessarily the entry. So and again, I think there's numerous cases that talk about this, including Hopkins. As I said, I'll submit an additional submission on that under 28J. But the case law as a whole, again, does not limit to the entry. And so because that, and again, it makes perfect sense, because this home, as the court says, is a holy place almost, and to allow police to trick you into letting you into their house, and then say, aha, you're under arrest, is just not consistent with the strong protections that the Supreme Court in this court has afforded to a person's own home. Thank you, counsel. The case just argued will be submitted for decision, and will be in recess for the afternoon. All rise. Thank you. The court for this session stands adjourned. Thank you.
judges: THOMAS, McKEOWN, CLIFTON